LESTER FULK, APPELLANT, V. JOHN MCLELLAN, APPELLEE.
498 N.W.2d 90

Filed April 2, 1993.    No. S-90-1205.

Frederick B. Allan, Jr., of Bauer, Galter, O'Brien & Allan, for appellant.

Paul E. Hofmeister, of Van Steenberg, Chaloupka, Mullin, Holyoke, Pahlke, Smith, Snyder & Hofmeister, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

WHITE, J.

Plaintiff-appellant, Lester Fulk, commenced an action against defendant-appellee, John McLellan, alleging that Fulk was damaged because of McLellan's negligence and misrepresentations. The district court sustained McLellan's demurrer to Fulk's second amended petition and dismissed the actions. Fulk appeals.

In reviewing an order sustaining a demurrer, an appellate court accepts the truth of all facts well pled, as well as the factual and legal inferences which may reasonably be deduced therefrom, but the court does not accept the conclusions of the pleader. *Barelmann v. Fox*, 239 Neb. 771, 478 N.W.2d 548 (1992); *Matheson v. Stork*, 239 Neb. 547, 477 N.W.2d 156

(1991); *Braesch v. Union Ins. Co.*, 237 Neb. 44, 464 N.W.2d 769 (1991). A statement of "facts sufficient to constitute a cause of action," as used in Neb. Rev. Stat. § 25-806(6) (Reissue 1989), means a narrative of events, acts, and things done or omitted which show a legal liability of defendant to plaintiff. *Balfany v. Balfany*, 239 Neb. 391, 476 N.W.2d 681 (1991).

Plaintiff's second amended petition asserted the following: From 1965 to July 31, 1986, defendant was employed by the Gering National Bank & Trust Company (bank). As a bank officer, defendant was responsible for the line of credit and loans made by the bank to Donald and Marilyn Fulk (the Fulks), relatives of the plaintiff.

During 1984, defendant contacted plaintiff and his wife to inquire whether they would guarantee a portion of the debt owed by the Fulks. After several discussions, plaintiff and his wife agreed that they would sign a limited guarantee as to $68,000 of the remaining indebtedness the Fulks owed to the bank. At all times relevant to the execution of the guarantee, plaintiff could not read and relied almost totally on his wife to read and review documents before his signing them. Based upon the prior discussions, understandings, and representations, plaintiff, alone and unaccompanied by his wife, executed what he thought was a limited guarantee. Defendant witnessed the guarantee document. Plaintiff never received a copy of the executed document and was unaware that the guarantee was unlimited.

In a letter dated April 11, 1986, defendant informed plaintiff that repayment of the Fulks' debt had become problematic and that the parties needed to discuss plaintiff's liability on the guarantee. Several meetings took place between the parties after receipt of the letter. It was at one of the first two meetings that plaintiff discovered he had signed an unlimited guarantee.

On April 30, 1986, the defendant agreed that plaintiff's liability under the guarantee would be restricted to the $68,000 figure originally agreed upon. This agreement was memorialized in defendant's notations in the Fulks' files and in the following handwritten notation appearing on the top of the guarantee document: "Current obligation is agreed as of 4-30-86 is $68,000."

Following the April 30 meeting, plaintiff met with defendant and various officers of the bank to finalize the agreement. The parties prepared and signed a formal agreement recognizing plaintiff's limited guarantee. The formal agreement was submitted to the bank on July 25, 1986. Simultaneous with this transaction, the bank officials entered into an agreement with the Fulks regarding their remaining indebtedness. The parties agreed to meet on August 1, 1986, to complete the transaction and prepare any remaining notes and documents. Defendant did not record this transaction in the minutes of either the loan committee or the board of directors of the bank.

On July 31, the Comptroller of the Currency declared the bank to be insolvent and terminated its powers in existence as a national banking association. When plaintiff returned to complete the transaction on August 1 as planned, a representative of the Federal Deposit Insurance Corporation (FDIC) refused plaintiff's tendered check. After the bank was declared insolvent, defendant failed to report the April 30 agreement on the criticized asset report filed by the bank while it was operating under the jurisdiction of the Comptroller of the Currency.

On October 20, 1987, the FDIC filed a complaint against plaintiff in the U.S. District Court for the District of Nebraska, requesting a money judgment in the amount of $196,867.72, together with accrued interest, for a total of more than $300,000. Plaintiff thereafter reached a settlement with the FDIC for $267,000.

In the amended petition, plaintiff first alleged that defendant's negligence in failing to properly record and report the April 30 transaction resulted in plaintiff's being denied a defense against the FDIC, thus forcing plaintiff to be held liable, without limitation, for the Fulks' debt owed to the bank. Plaintiff also alleged that defendant's negligence directly and proximately caused plaintiff to file a chapter 11 bankruptcy proceeding, resulting in significantly related costs.

Plaintiff's second cause of action alleged that he was damaged by defendant's misrepresentation. Plaintiff asserted that defendant wrongfully had plaintiff execute an unlimited guarantee when defendant knew, or should have known, that

plaintiff could not read; that plaintiff was unaccompanied by his wife; and that plaintiff was relying upon the prior conversations, understandings, and representations made by the defendant that the guarantee was limited to $68,000. Plaintiff alleged that as a direct and proximate result of this misrepresentation, he was damaged in the amount of $267,000 plus costs and attorney fees incurred in filing the bankruptcy proceedings.

Defendant demurred, alleging that plaintiff's second amended petition (1) did not state facts sufficient to constitute a cause of action for either negligence or misrepresentation; (2) was premature, in that plaintiff had not yet suffered any damages; (3) requested judgment for attorney fees, which were not recoverable under Nebraska law; (4) did not state a cause of action because plaintiff elected to settle with the FDIC rather than to proceed to trial and test its defenses, and plaintiff failed to plead that defendant was a party in such action or had been given an opportunity to defend such action or appear to contest the liability of plaintiff; (5) was barred by the statute of limitations; and (6) did not state a cause of action because defendant was acting within the scope of his employment and therefore was not personally liable to plaintiff. Without making specific findings, the district court sustained the demurrers and dismissed plaintiff's petition.

The district court did not state its reasoning for sustaining defendant's demurrer. As we have previously expressed, " ' " '[w]hen a demurrer is interposed stating several grounds, the court should, when sustaining the demurrer, specify the grounds upon which it is sustained; otherwise, this court is not informed in regards wherein the complaint was deficient. . . .' " ' " *St. Paul Fire & Marine Ins. Co. v. Touche Ross & Co.*, 234 Neb. 789, 791, 452 N.W.2d 746, 748-49 (1990). Having no specific findings before us, we must review the grounds of the demurrer to determine if any one objection, or any objections taken together, supports the district court's decision to sustain the demurrer and dismiss the actions.

Defendant's first objection by demurrer alleged that the petition did not state facts sufficient to constitute a cause of action for either negligence or misrepresentation. To state a

cause of action for negligence, a plaintiff must plead facts on which it can be inferred that the defendant owed a legal duty to protect the plaintiff from injury, that the defendant failed to discharge that duty, and that damage proximately resulted from such failure. *Widga v. Sandell*, 236 Neb. 798, 464 N.W.2d 155 (1991).

Plaintiff's petition did not identify a specific legal duty owed by defendant to plaintiff. However, to resist a challenge on demurrer, a plaintiff's petition need only plead facts from which it can be inferred that defendant owed a legal duty to protect the plaintiff from injury. *Widga, supra.* The petition here infers that a duty of reasonable care to comply with bank regulations for recording and reporting arose from defendant's affirmative efforts in seeking out plaintiff to act as a guarantor and from the alleged misrepresentations that created a risk of injury to plaintiff.

This court has never determined whether a bank official has a legal duty to use reasonable care in administering loans and related documents on behalf of borrowers or guarantors, nor need we now. Those jurisdictions which recognize a duty to process financial documents with reasonable care hold that where only economic loss is at issue, liability for negligence may be imposed based upon contractual privity or its equivalent. *High v. McLean Financial Corp.*, 659 F. Supp. 1561 (D.D.C. 1987); *Yousef v. Trustbank Sav., F.S.B.*, 81 Md. App. 527, 568 A.2d 1134 (1990). Plaintiff's negligence action fails to plead or otherwise imply that privity of contract existed between plaintiff and defendant in his individual capacity. Therefore, plaintiff's petition fails to state a cause of action in negligence.

In order to properly state a cause of action for misrepresentation, the well pled facts and permissible inferences of plaintiff's petition must assert the following elements: (1) A representation was made; (2) the representation was false; (3) the representation was known to be false when made, was made recklessly without knowledge of its truth and as a positive assertion, or was negligently made; (4) the representation was made with the intention that plaintiff should rely on it; (5) plaintiff reasonably did so rely; and (6) plaintiff suffered damages as a result. *Commerce Sav. Scottsbluff v.*

*F.H. Schafer Elev.*, 231 Neb. 288, 436 N.W.2d 151 (1989).

Plaintiff's petition asserts that (1) defendant agreed and represented that plaintiff's liability on the guarantee would be limited to $68,000; (2) the guarantee was in fact unlimited; (3) when plaintiff signed the guarantee, defendant, falsely or recklessly, without knowledge of the truth, made the representation that the guarantee was limited as agreed; (4) defendant knew or should have known that plaintiff could not read and was unaccompanied by his wife, and therefore the representation was made with the intention that plaintiff rely on it; (5) in signing the guarantee, plaintiff reasonably relied upon the prior conversations, understandings, and representations made by defendant; and (6) as a result of defendant's misrepresentations, plaintiff was damaged by incurring unlimited liability for the Fulks' debt. Based on the foregoing, we find that plaintiff's petition sufficiently stated a cause of action for misrepresentation.

Defendant's demurrer to the amended petition asserted that the petition failed to state a cause of action because the action was premature. Defendant emphasized that the petition did not allege that a judgment had been entered against plaintiff in favor of FDIC. Arguing that entering into a settlement agreement is wholly insufficient, defendant maintains that plaintiff has not yet suffered damages, making the petition premature. We find defendant's argument to be without merit.

The petition alleges that because of defendant's negligence and misrepresentations, the FDIC filed a complaint against plaintiff. Subsequently, plaintiff reached a settlement agreement with the FDIC for $267,000, in addition to incurring costs in filing for chapter 11 bankruptcy protection. There is no indication in the pleading that plaintiff was not contractually bound by the FDIC settlement agreement. In order for a petition that is being challenged by demurrer to sufficiently state money damages resulting from a defendant's alleged negligence or misrepresentation, the plaintiff must plead facts which show the plaintiff has become liable to pay a specific amount and has or will have to incur such cost. In contrast, a petition which merely alleges damages which might arise in the future is premature and fails to state a cause of action. *St. Paul*

*Fire & Marine Ins. Co. v. Touche Ross & Co.*, 234 Neb. 789, 452 N.W.2d 746 (1990). Finding nothing in plaintiff's petition to indicate that the settlement agreement was merely speculative or illusory, we find plaintiff's petition sufficiently alleged damages to state a cause of action.

Defendant further asserted in his demurrer that plaintiff's request for attorney fees incurred in the action and costs of defense in the FDIC action and the bankruptcy proceeding are not recoverable under Nebraska law and therefore do not constitute a cause of action. Attorney fees will generally be allowed only in such cases as are provided for by statute or where a uniform course of procedure has been to allow such recovery. *In re Estate of Reimer*, 229 Neb. 406, 427 N.W.2d 293 (1988). While it is true that plaintiff failed to plead an applicable statute or course of procedure which allows the recovery of attorney fees, plaintiff's failure to do so is not dispositive of the appeal before this court. We previously determined that plaintiff sufficiently pled the FDIC settlement as damages resulting from the misrepresentations. Therefore, defendant's objection to additional requests for damages need not be addressed, considering that the trial court sustained the demurrer to the entire petition.

Defendant also demurred based on the fact that plaintiff elected to settle the case with the FDIC instead of proceeding to trial and testing his defenses and that plaintiff failed to either (1) plead that defendant was a party in such action, (2) plead that defendant was given an opportunity to defend such action, or (3) plead that defendant was given an opportunity to appear therein and contest the liability of plaintiff.

Plaintiff argues that under Fed. R. Civ. P. 14, his right as a defendant in the FDIC action to bring in a third party is permissive and not compulsory. Defendant asserts that joinder of this action in the federal action would have promoted efficiency and allowed the courts to settle the disputes in one action. Additionally, defendant maintains that by electing to settle with the FDIC instead of making defendant a party to the action and progressing to trial, plaintiff is barred from bringing this action.

Defendant does not assert that he was precluded from

protecting his interest in the outcome of the FDIC action by exercising his opportunity to intervene, nor does he claim that he was a necessary and indispensable party under Fed. R. Civ. P. 19. Even so, under Fed. R. Civ. P. 19, joinder is not required of persons against whom a defendant may have a claim for contribution. *Nottingham v. General American Communications Corp.*, 811 F.2d 873 (5th Cir. 1987), *cert. denied* 484 U.S. 854, 108 S. Ct. 158, 98 L. Ed. 2d 113; *Westmont Industries, Inc. v. Weinstein*, 762 F. Supp. 646 (M.D. Pa. 1989). Moreover, failure to implead a defendant does not bar a subsequent suit for contribution or indemnity. *DeVore Brokerage Co. v. Goodyear Tire & Rubber Co.*, 308 F. Supp. 279 (M.D. Tenn. 1969). We therefore find that plaintiff's decision to settle with the FDIC without joining defendant as a party in the federal action was not sufficient grounds upon which the trial court could sustain the demurrer.

Next, defendant generally asserted in his demurrer that the statute of limitations on plaintiff's causes of action had expired. The applicable statute of limitations governing both the negligence and misrepresentation actions states:

> The following actions can only be brought within four years: . . . (3) an action for an injury to the rights of the plaintiff, not arising on contract, and not hereinafter enumerated; and (4) an action for relief on the ground of fraud, but the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud
> . . . .

Neb. Rev. Stat. § 25-207 (Reissue 1989).

Plaintiff's original petition was filed April 6, 1990. The alleged acts of negligence occurred sometime on or after April 30, 1986. Plaintiff's petition infers that because plaintiff could not read and did not receive a copy of the guarantee, the misrepresentation was not discoverable until sometime after the letter of April 11, 1986. If a 4-year statute of limitations is applied, neither cause of action was barred under the facts as alleged. Where, as here, the petition does not disclose on its face that it is barred by the statute of limitations, defendant must plead the statute and has the burden of proving the affirmative defense. See *DeSciose v. Chiles, Heider & Co.*, 239 Neb. 195,

476 N.W.2d 200 (1991). Defendant's general allegation, without more, was insufficient to justify the district court's order sustaining the demurrer.

Lastly, defendant maintained that he could not be held personally liable to plaintiff because he was employed by the bank at the time of the alleged wrongful acts and was acting within the scope of his employment. We find this last assertion to also be without merit. As this court has previously recognized, "an agent may be liable for the agent's fraudulent conduct, such as a misrepresentation of a material fact, during a transaction on behalf of the principal. . . . ' "An agent is personally liable to third persons for [the agent's] misfeasances and positive wrongs. . . ." ' " (Citation omitted.) *Edwin Bender & Sons v. Ericson Livestock Comm. Co.*, 228 Neb. 157, 167, 421 N.W.2d 766, 772 (1988).

Accepting the truth of all well pled facts, in addition to all permissible inferences, we find plaintiff's petition failed to state a cause of action for negligence, but did sufficiently state a cause of action for misrepresentation. Consequently, we reverse the order of the district court sustaining defendant's demurrer in its entirety.

REVERSED AND REMANDED.